501 P.2d 1199

**STATE of Arizona, Appellee,**

v.

**William Joseph SAINZ, Richard Alex Sainz, Appellants.**

**No. 2 CA–CR 289.**

Court of Appeals of Arizona, Division 2.

Oct. 24, 1972.

Rehearing Denied Nov. 24, 1972.

Review Denied Jan. 2, 1973.

Gary K. Nelson, Atty. Gen., Phoenix, by Howard L. Fell, Asst. Atty. Gen., Tucson, for appellee.

Kain & Geyler, by Sidney L. Kain, Tucson, for appellants.

KRUCKER, Chief Judge.

Appellants who are brothers, were jointly tried and convicted by a jury for the crime of aggravated assault under A.R.S. § 13-245, subsec. A, par. 7, as amended. From the judgments of guilt, they present this appeal.

Appellants lived with their parents on North Sixth Avenue in Tucson, Arizona. At 3:40 a. m. on December 4, 1970, the Tucson Police Department received a phone call from a woman who identified herself as Mrs. Sainz, indicating that she was being pursued by her son, who had a knife. Upon her request and direction, several police units containing at least five police officers were dispatched to the same address on North Sixth Avenue where appellants resided. When the police officers arrived, the appellants and their father were in the backyard, which was enclosed partially by a wall and partially by an oleander hedge. One officer, while standing in the alley, told them that they were responding to a call that a woman was being assaulted. The appellants advised them that everything was all right and asked them to leave. Wishing to verify this, the officers disregarded the appellants' request and entered the yard through an opening in the oleander hedge. An argument ensued between the officers and the young men in the rear portion of the yard. At this point the appellants left and entered the rear entrance of the residence. Three of the officers followed them across the backyard and up to the door. The evidence is in conflict at this point. The officers testified that Richard Sainz grabbed the lead officer, pulled him into the residence, and he was then assaulted by William Sainz. William testified that he put his left hand out in an effort to stop the police from entering the home.

Prior to trial the appellants filed a motion to quash the indictment. In support of this motion they contended that the officers conducted an unreasonable search under the Fourth Amendment in remaining on the premises and entering the appellants' home after being asked to leave and, therefore, the officers were trespassers who were exceeding their authority. Appellants thus conclude that they were justified as a matter of law in their actions and could not be prosecuted under A.R.S. § 13–245, subsec. A, par. 7, as amended, which states:

§ 13–245. Aggravated assault or battery; definition; punishment

"A. An assault or battery is aggravated when committed under any of the following circumstances:

\* \* \* \* \* \*

7. When the person committing the offense knows or has reason to know that the victim is a peace officer, or a person summoned and directed by such officer while he is engaged in the execution of any of his official duties."

The court denied the appellants' motion to quash stating "there is no remedy available to the defendants."

■ At the trial, after opening statements were made by both counsel, appellants presented these same contentions in the form of a motion for directed verdict. Once again the trial court rejected their contentions and denied their motion. The motion was renewed after the State rested, with the same effect. On appeal, these same contentions are urged as grounds for reversal. The case resolves itself, then, into the following: Were the police officers lawfully on appellants' premises and, (accepting appellants' version as to how the police entered their home), did they have a right to proceed into appellants' home without a search warrant or the appellants' consent?

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and ef-fects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

This Amendment does not outlaw all searches, but only those that are *unreasonable*. State v. Miranda, 104 Ariz. 174, 450 P.2d 364 (1964), cert. den., 396 U.S. 868, 90 S.Ct. 140, 24 L.Ed.2d 122; State v. Pine, 8 Ariz.App. 430, 446 P.2d 940 (1968), cert. den., 395 U.S. 962, 89 S.Ct. 2103, 23 L.Ed.2d 747. We, of course, recognize the general rule that in order to be reasonable, a search of private premises ordinarily should be pursuant to a legally issued warrant. Vale v. Louisiana, 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); State v. Lenahan, 12 Ariz.App. 446, 471 P.2d 748 (1970); Davis v. State, 236 Md. 389, 204 A.2d 76 (1964), cert. den., 380 U.S. 966, 85 S.Ct. 1113, 14 L.Ed.2d 156. The courts, however, have recognized exceptions to this general rule. One such exception is an entry occasioned by emergency or exigent circumstances. Wayne v. United States, 115 U.S.App.D.C. 234, 318 F.2d 205 (1963), cert. den., 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86; State v. Boyle, 207 Kan. 833, 486 P.2d 849 (1971); Patrick v. State, Del., 227 A.2d 486 (1967); Davis v. State, supra.

■ It is our opinion that the circumstances presented here fall within this exception and thus make the entry on appellants' premises and subsequent entry into the house lawful. The peace officers were investigating the possibility of a serious crime in response to a call suggesting the commission of a felony. Although appellants told them that they were not needed, that the trouble had abated and that the woman was safe, we believe that peace officers should be allowed sufficient freedom in performing their duties to protect the safety of the public. They would have been remiss in their duty had they taken the word of others that everything was all

right. While it is true that the woman who said she was Mrs. Sainz may well have been someone else, and her statement that she was being chased by her son with a knife was uncorroborated, we feel the following statement in Wayne v. United States, supra, applicable to the case at bar:

> "The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent and exigency or emergency. Fires or dead bodies are reported to police by cranks where no fires or bodies are to be found. Acting in response to reports of 'dead bodies,' the police may find the 'bodies' to be common drunks, diabetics in shock, or distressed cardiac patients. But the business of policemen and firemen is *to act,* not to speculate or meditate on whether the report is correct. People could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. Even the apparently dead often are saved by swift police response. A myriad of circumstances could fall within the terms 'exigent circumstances' referred to in Miller v. United States, supra [357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958).]." 318 F.2d at 212.

The preservation of human life is paramount to the right of privacy protected by the Fourth Amendment.

We agree with appellants' further contention that what constitutes a reasonable or unreasonable search is purely a judicial question. State v. Taylor, 2 Ariz. App. 314, 408 P.2d 418 (1965). However, appellants were not prejudiced when the court left the question of the reasonableness of the actions of the officers to the jury as the officers' conduct was reasonable as a matter of law.

For the foregoing reasons, the judgment is affirmed.

HATHAWAY and HOWARD, JJ., concur.