502 P.2d 1323

**The STATE of Arizona, Appellee,**
**v.**
**William HUTTON, Appellant.**
**No. 2336.**

Supreme Court of Arizona,
In Banc.
Nov. 22, 1972.

Gary K. Nelson, Atty. Gen., by Peter Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by William C. Blakley, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal by the defendant, William Hutton, from a jury verdict and judgment of guilty to the charge of illegal possession of heroin for sale in violation of § 36–1002.01 A.R.S. (as amended 1961) and a sentence with a prior felony drug conviction, § 36–1002.01, subsec. B A.R.S., of twelve to fifteen years.

Prior to the trial, the defendant moved to suppress evidence seized at the time of Hutton's arrest. This motion was denied and the sole question for our determination is whether the trial court erred in denying defendant's motion to suppress the evidence obtained as a result of a warrantless search of the defendant's person.

The facts necessary for a determination of this matter are as follows. In the evening of 21 October 1970, Phoenix Police Officer Arthur Quinonez received a telephone call from a confidential reliable informant who informed him that the defendant William Hutton was in possession of heroin. The informant told Officer Quinonez that Hutton was standing in front of the Tops Tavern at 1115 Buckeye Road, Phoenix, Arizona, and that he was wearing a hat, striped pants and a brown short-sleeved shirt.

Acting on this information, Officer Quinonez immediately called for a narcotic unit to assist him. Quinonez testified that within two or three minutes after he had spoken to the informant, Officer Oscar Long responded to the call for assistance.[1] Quinonez provided Officer Long with the description of the defendant's clothing and told him that an informant had advised that Hutton (also known as "Little Hut")

---

[1] It is noted that at one place in the reporter's transcript Officer Quinonez is reported as testifying that he received the call from the informant at 5:10 p. m. and did not call the narcotics unit until 8:00 p. m., nearly three hours later. Both appellant's brief and appellee's brief repeat the 5:10 p. m. time as the time of the call. A close reading of the entire record indicates that the 5:10 p. m. figure is erroneous and that Officer Quinonez probably received the call at about five minutes before 8:00 p. m.

was in possession of heroin. Officer Quinonez testified at the suppression hearing that the informant had previously given him information upon which some 19 search warrants had been issued and 40 to 45 persons had been arrested. He also testified that the informant could identify narcotics and had made two controlled buys while under surveillance. Both Officer Quinonez and the two narcotics officers testified that the defendant, known as "Little Hut", was a known user and dealer of narcotics.

Officer Quinonez testified:

"Q. Did you relate anything, especially to Officers Long and Patterson as to any reason why Little Hut would still be in the vicinity?

"A. No, sir, that was the reason why I didn't take, personally . . .

"Q. I didn't understand the last part.

"A. No, sir, that was the reason I didn't take it personally, because he had gone downtown within 20 minutes and I advised him that I know the habits of Mr. Hutton and somebody would have to get there right away, that was the reason I couldn't get there . . ."

Officer Patterson, one of the arresting officers, testified:

"Q. Did you know Little Hut or William Hutton by sight?

"A. Yes, sir, I did and I also carried a police picture of him.

"Q. Approximately how long had you carried this picture?

"A. I carried it—

"Q. Prior to October 21st, that is?

"A. Probably about a month. That would be a rough guess, a month.

"Q. Now the information that Officer Long gave you and that he stated, did he tell you where that information had come from?

"A. You mean on October 21st, is that what you mean?

"Q. Yes.

"A. Yes, sir, he told me that Detective Quinonez told him.

"Q. Was there any statement made with respect to where Little Hut was to be found?

"A. On the night of the 21st, yes, sir, that he would be at Top's Bar which is located at 1115 West Buckeye.

"Q. Did you get a search warrant or an arrest warrant?

"A. No, sir, we didn't.

"Q. Why?

"A. By the time we could have gotten a warrant he would probably have been gone again.

"Q. Now was that based upon your prior experience and information upon Mr. Hutton?

"A. Yes, sir, it was."

The officers proceeded immediately to Tops Bar arriving at approximately 8:15 p. m. Officers Long and Patterson entered the bar and proceeded into the poolroom where they located Hutton. The officers then conducted a search of the defendant.

Officer Patterson found $237.00 in one of the defendant's pockets. During the search of the defendant, Hutton did not protest. However, when asked to remove his shoes, he resisted, and Officer Patterson thereafter forcibly removed them. Inside each of Hutton's shoes was a plastic bag containing several ballons which held what the officers believed to be narcotics. Then the defendant was formally placed under arrest, handcuffed, and the money removed from his pants pocket. Officer Patterson later conducted a "Marquis Reagent Test" on the contents of the balloons at the Phoenix Police Department. The results of the test indicated the presence of

opiates. Defendant Hutton was then told again that he was under arrest.

Defendant's motion to suppress heard prior to trial was denied. A jury returned a verdict finding the defendant guilty of possession of heroin for sale. Hutton admitted the allegation of a prior drug conviction and was sentenced to not less than twelve nor more than fifteen years in the Arizona State Penitentiary.

The defendant appealed, contending that the evidence seized by the two police officers was without a search warrant or incident to a lawful arrest and was therefore violative of his rights as guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution. The State contends that this was a lawful arrest and therefore the search as an incident thereto was lawful.

Under the facts in this case, there is a question as to when the defendant was "arrested." His freedom of movement was certainly restricted by the officer prior to the search, but he was not formally placed under arrest until after the search revealed the probable narcotics. The briefs of counsel place great emphasis on the question of when the arrest occurred, defendant's brief contending that the arrest occurred after the search and the State's brief contending the arrest occurred first and therefore the search was valid as an incident to a lawful arrest. We do not consider the point dispositive of this appeal. It is immaterial for our purposes when the arrest occurred for it was the search and resulting seizure which was the basis of the arrest. Without the search there would have been no arrest in this case.

"We find no merit in the contention that a reasonable search and seizure should be rendered unconstitutional merely because there exists some question as to the point in time at which an actual arrest occurred. Numerous pronouncements of the U. S. Supreme Court and the Arizona Supreme Court have established that only unreasonable searches and seizures are proscribed by the Fourth Amendment, that the test of the constitutionality of a search and seizure is whether it was reasonable under the facts and circumstances of the case, and that one test of reasonableness is whether the search and seizure was incident to a lawful arrest. Implicit in these pronouncements is the conclusion that other forms of reasonable searches and seizures are permissible under the Fourth Amendment as exceptions to the general requirement that a search warrant must be obtained wherever reasonably practicable. Thus to conclude that a reasonable search and seizure, the reasonableness thereof being based on sufficient probable cause on which to base an arrest, is to be rendered unconstitutional merely because it preceded an actual arrest appears hypertechnical and irreconcilable in logic and reason." State v. Cofhlin, 3 Ariz.App. 182, 185–186, 412 P.2d 864, 867–868 (1966).

The central and only question before this court is whether this was a reasonable search and seizure under the Constitutions of the United States and the State of Arizona.

■■■ The Fourth Amendment to the United States Constitution proscribes only unreasonable searches and seizures. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). The test for lawful searches and seizures is the unreasonableness of the search under the circumstances. State v. Quintana, 92 Ariz. 267, 376 P.2d 130 (1962). It is well established that, in seizing goods and articles, police officers must normally secure and use search warrants. State v. Madden, 105 Ariz. 383, 465 P.2d 363 (1970).

■■■ The law requires that if at all possible the independent and neutral opin-

**508**

ion of a magistrate be interposed between the officer and the citizen by requiring a warrant before a search is allowed. While it is and should be a strictly enforced requirement, it is not a completely inflexible rule but one that may, under extraordinary and exigent circumstances, be dispensed with:

"It has been suggested that since the rule has been applied only where there were reasonable grounds to believe that imminent destruction or removal of material subject to seizure was threatened * * * [it] is merely an application of the accepted principle that the Fourth Amendment does not preclude a search without a warrant in such 'exigent circumstances.' (citations omitted) The 'exigent circumstances' exception to the general rule requiring a search warrant is independent of that permitting a warrantless search incident to a valid arrest, (citations omitted) and if applicable it would be immaterial that the arrest followed the search, or that there was no arrest at all. The only relevant inquiry would be whether it was probable that contraband was both present and threatened with imminent removal or destruction." Cipres v. United States, 343 F.2d 95, 99 (9th Cir. 1965).

We believe that under the totality of the circumstances in this case, the fact that the informant was reliable, that the defendant was a known drug user and dealer, and particularly the fact that defendant did not stay in one place for a sufficient period of time, the warrantless search was reasonable. To have required the officer to obtain a search warrant would probably have meant that the defendant would have been gone by the time the officer could have used the warrant.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.