504 P.2d 946

**STATE of Arizona, Appellee,**

v.

**James Henry HINES, Appellant.**

**No. I CA–CR 438.**

Court of Appeals of Arizona,
Division 1,
Department B.

Jan. 4, 1973.

Rehearing Denied Jan. 26, 1973.

Review Denied March 6, 1973.

———◆———

Gary K. Nelson, Atty. Gen., by Louis A. Moore, Jr., Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

EUBANK, Judge.

This criminal appeal claims error in the trial court's denial of defendant's motion to suppress evidence consisting of 924 amphetamine tablets taken from his automobile.

The defendant was arrested in the early morning hours of March 8, 1971, by two city of Phoenix policemen in downtown Phoenix. A complaint was filed in the justice court charging him with the possession of dangerous drugs for sale.[1] Following a preliminary hearing on May 19, he was bound over to answer the charge in the Superior Court. On May 26 he pled not guilty to the information and the matter was set for trial in July, 1971. Thereafter defendant moved to suppress the evidence, i. e., the dangerous drugs, which motion was denied. The matter then went to trial on the basis of the record of the preliminary hearing and motion to suppress hearing, before the trial judge sitting without a jury. The judge found the defendant guilty of the lesser included crime of possession of a dangerous drug and sentenced him to not less than three years and not more than four years in the Arizona State Prison. An additional charge of possession of marijuana, which was consolidated for trial, was dismissed.

Defendant appeals from the judgment of guilt and sentence alleging that the trial

1. A.R.S. §§ 32–1970, subsec. C, 32–1996, subsec. C and 32–1901.

court violated his rights under the Fourth and Fourteenth Amendments of the U. S. Constitution by denying his motion to suppress the evidence.

The question before us is whether the search and seizure were reasonable under the Constitutions of the United States and the State of Arizona.

The Arizona Supreme Court in its recent decision of State v. Hutton, 108 Ariz. 504, 502 P.2d 1323 (Filed November 22, 1972), stated:

"The law requires that if at all possible the independent and neutral opinion of a magistrate be interposed between the officer and the citizen by requiring a warrant before a search is allowed. While it is and should be a strictly enforced requirement, it is not a completely inflexible rule but one that may, under extraordinary and exigent circumstances, be dispensed with:

'It has been suggested that since the rule has been applied only where there were reasonable grounds to believe that imminent destruction or removal of material subject to seizure was threatened * * * [it] is merely an application of the accepted principle that the Fourth Amendment does not preclude a search without a warrant in such "exigent circumstances." (citations omitted) The "exigent circumstances" exception to the general rule requiring a search warrant is independent of that permitting a warrantless search incident to a valid arrest, (citations omitted) and if applicable it would be immaterial that the arrest followed the search, or that there was no arrest at all. The only relevant inquiry would be whether it was probable that contraband was both present and threatened with imminent removal or destruction.' Cipres v. United States, 343 F.2d 95, 99 (9th Cir., 1965)." (108 Ariz. at 507, 502 P.2d at 1326).

See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); State v. Lawson, 107 Ariz. 603, 491 P.2d 457 (1971).

The record shows that the facts of this case were as follows: At approximately 1:00 A.M. on the morning of March 8, 1971, two city of Phoenix police officers found an automobile abandoned at a stop sign on Butler Street at Central Avenue in the city of Phoenix and blocking a lane of traffic. In the back of the vehicle a 10-speed bicycle was clearly visible. No person was in sight. Shortly after the police officers arrived, another vehicle driven by the defendant pulled up directly behind the abandoned one, and two persons jumped out of the passenger's side and approached the abandoned vehicle. One officer intercepted the two passengers requesting identification. The other officer approached the defendant driver. He testified to the events as follows:

"A. I went up to the driver's window. As I leaned down to talk to the driver, asked him for some I.D., I could smell alcoholic liquor from inside the car.

I could see several beer cans on the floorboard, on the passenger side of the car. I asked him for some I.D., which he produced; I asked him to step out of the car.

As he opened the door to get out of the car, I also observed a beer can sitting on the floorboard directly beneath where his feet would be.

Q. I see. What did you do next after you observed this beer can?

A. As he stepped out of the car, I reached down to pick up the beer can. As I did so, I observed a bag, a brown bag, beneath the front seat where the driver would be sitting.

Q. Would you describe this bag?

A. It was a regular brown sack like you get in the grocery store.

Q. Was it—what shape was it in?

A. Sort of crumpled up.

Q. I see. Did you notice anything unusual about this brown bag?

A. Yes, sir; also there was, appeared to be a plastic bag in the opening of the brown bag.

Q. I see. And what could you see of this plastic bag?

A. Only that it was—appeared to be folded very tightly around whatever was inside the plastic bag.

Q. Did you see what was inside?

A. I took the bag, the plastic bag out, observed a greenish-brown substance, believed at the time to be marijuana.

Q. I see. What else did you—did you see anything else there?

A. I reached back into the bag, could feel other items. I pulled out another bag which contained several white tablets.

Q. Where was the defendant during this time?

A. He was standing directly on the passenger side of the car by the window.

Q. What did you do after you found these, what you testified, the white pills?

A. After I had found the other bag, I stood up and I was going to go on the other side of the car, place the defendant under arrest for marijuana.

Before I could do so, the defendant stood up and fled south through an orchard.

Q. What did you do?

A. I pursued and caught him about a hundred feet from the car.

Q. I see. What did you do at that time?

A. I placed him under arrest, brought him back to the squad car.

Q. And what did you do next after that?

A. He was searched and placed in the back of the squad car. I went back to the car, took out the brown bag and found eight more separate plastic bags of pills.

Q. What did you do with these pills?

A. I kept them all in the bag in my possession until I went to the station, made out the reports."

On cross-examination the officer testified:

"Q. Did you indicate that you—well, I gather you testified that you did not advise that you suspected—that he was under arrest and was a minor consuming, is that correct?

A. Not as yet, I didn't know if there was any beer in those cans.

Q. Really, you had no reason at all to search his car, did you?

A. I believe I did, yes, sir.

Q. You believe you did; what is the basis of that belief?

A. By looking at the defendant at that time of the morning, he appeared to be under age, seeing the beer cans on the floor, I reached to get the can to see if it had any alcoholic beverage in it before I confronted him with it.

As I did so, I saw this brown bag with a plastic bag on the inside, which I have seen many in the past as wrapped similar to how marijuana normally is."

The defendant, who was an apprentice jockey, testified that he had illegally purchased one thousand amphetamines for his own use in order to keep his weight down, and that at the time of his arrest he weighed "about 120" pounds.

In the case at bar the officers clearly had the duty to investigate the automobile abandoned in a traffic lane with a 10-speed bicycle in the back of it; the circumstances of the defendant's arrival; and the passengers' interest in the abandoned automobile. The performance of this duty led to the substantial suspicion that a law was being violated in the officer's presence: a minor consuming alcoholic beverages when he smelled alcohol and saw the open beer cans. The effort to remove the beer can at the defendant's feet led to the suspected marijuana and the dangerous drugs, at which point the defendant fled.

It is our opinion that under the totality of the circumstances of this case the warrantless search was reasonable and justified. *See* Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); State v. Hutton, supra.

Judgment is affirmed.

JACOBSON, Chief Judge, Division 1, and HAIRE, J., concur.