555 P.2d 1124

**The STATE of Arizona, Appellee,**

v.

**Pedro Rodolfo MANKEL, Appellant.**

**No. 2 CA–CR 761.**

Court of Appeals of Arizona, Division 2.

Oct. 1, 1976.

---

Bruce E. Babbitt, Atty. Gen., Phoenix by Heather A. Sigworth, Asst. Atty. Gen., Tucson, for appellee.

Hooker, McDonald & Morgan by Robert J. Hooker, Tucson, for appellant.

## OPINION

KRUCKER, Judge.

This is an appeal from a judgment of guilty to the crime of possession of heroin for sale, A.R.S. § 36–1002.01, and a sentence thereon of not less than seven nor more than ten years in the Arizona State Prison.

Although appellant has presented seven questions for our determination, because of the peculiar circumstances of this appeal we need not consider them all. One of the issues which appellant raises is that he did not validly waive his right to a trial by jury. The State has confessed error on this point and requests this court to reverse.

We have reviewed the proceedings below and find that the waiver of the right to trial by jury was not reflected on the record as having been knowingly and voluntarily made. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); *State v. Crowley,* 111 Ariz. 308, 528 P.2d 834 (1974). As this error is of significant constitutional dimension, the

438

judgment of conviction and sentence must be set aside.

There are two other questions for review which we must answer at this time:

1. Did the officers' entry into appellant's residence, the answering of his phone and the search thereof violate the Fourth Amendment?

2. Did the court err in failing to grant appellant's Motion to Dismiss, pursuant to Rule 8 of the Arizona Rules of Criminal Procedure?

The pertinent facts are as follows. On the morning of April 4, 1975, Mrs. Silvia Nerey contacted the Nogales Police Department after observing a man break a glass window pane and enter a neighboring dwelling. Prior to the arrival of the police, she observed the same man leave the residence, his hand wrapped in a bandage, and flee in a van. When the officers arrived she conveyed this information to them. Police Sergeant Martinez proceeded to the scene. The front door of the house in question was wide open and while outside Martinez observed blood on the porch and in the interior of the house. From his vantage point the residence appeared to have been ransacked. After knocking several times and failing to elicit a response, the officer entered appellant Mankel's two-room apartment.

After a cursory inspection, Martinez contacted Lt. Ronquillo, his superior, to "back him up." Within several minutes Ronquillo arrived and entered the house with Martinez to further investigate the crime and to dust for fingerprints.

While in the apartment, Officer Martinez answered a telephone call. An unidentified speaker stated, "Popoy, necesito chiva" which translates literally as "Popoy, I need some shit." This call was followed by a series of as many as 20 telephone calls. Although the record does not reflect the contents of each discussion, evidence

adduced at trial pertaining to several calls indicated that they concerned requests for "pills", "papers" and "shit".

After receiving the first call the officers began a visual inspection of the apartment. Upon receiving several more calls, Ronquillo attempted to obtain a search warrant. He testified that three of the four county judges he attempted to contact were out of town and that he had tried to locate a fourth magistrate but was informed that he, too, was not in the area.[1] The lieutenant then called the Chief of Police and was told to go ahead with the search. During the course of the subsequent warrantless search, heroin was discovered above a false ceiling panel.

Appellant's initial contention is that the "second entry" by Martinez and Ronquillo violated his Fourth Amendment rights and Art. 2, § 8 of the Arizona Constitution. The Fourth Amendment outlaws only unreasonable searches and seizures. *State v. Hutton,* 108 Ariz. 504, 502 P.2d 1323 (1972). Generally, in order to be reasonable a search of private premises should be pursuant to a legally issued warrant. *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970); *State v. Sainz,* 18 Ariz.App. 358, 501 P.2d 1199 (1972). However, the courts have recognized exceptions to this general rule. One such exception is an entry occasioned by emergency or exigent circumstances. *State v. Sainz, supra.*

■ It is clear that the initial entry of Martinez was lawful despite the absence of a warrant. From the bloodstains and condition of the house it was logical and prudent for the officer to believe that a serious crime had been committed and that a life was endangered. The fact that a victim was not actually found does not negate the possibility that existed. *United States v. Herndon,* 390 F.Supp. 1017 (S.D.Fla. 1975). The second entry by Martinez and

1. We note that conflicting evidence was introduced concerning Lt. Ronquillo's attempt to contact this fourth magistrate. Indeed, at the preliminary hearing Ronquillo stated that he had not attempted to contact the judge in question.

Ronquillo minutes later was merely a continuation of the lawful investigation. Lt. Ronquillo had been called as a backup man and entered the dwelling to observe the scene of the crime and to perform the technical function of dusting for fingerprints. The officers were still not completely certain whether there had been a crime of violence in addition to the burglary. Rather, they were performing their public duty with the hope of uncovering some clue which would lead them to the perpetrator of the crime. We cannot say this "second entry" was improper.

■ Appellant next contends that the answering of the telephone by the officers while in the residence was an invasion of privacy and violated both the Fourth Amendment and A.R.S. § 13–1051, et seq., (Supp.1973). We do not agree. This court, of course, recognizes that communications may be the subject of a search and seizure. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). However, appellant's reliance on *Katz* and A.R.S. § 13–1051, et seq., is misplaced. In *Katz,* the Supreme Court held that even in the absence of physical trespass, an electronic surveillance of a telephone conversation between a suspect and a third person constituted a search and seizure under the Fourth Amendment. However, the factual situation in the case at bar clearly is outside the scope of the holding of *Katz.* We fail to see how the communications here were "seized." There was no channeling into the lines of communications nor use of tapping or eavesdropping equipment. Rather, both officers were parties to the calls. *United States v. Anthony,* 444 F.2d 484 (9th Cir. 1971).

Likewise, A.R.S. § 13–1051, et seq., contains nothing to support appellant's position. The language of the statute prohibits intrusion into a channel by means of instrument or device and applies to one who

is neither a sender nor receiver of a telephone communication. It does not limit the class of persons who may be receivers of calls. It protects the means of communication, not the secrecy of the message.

■ In any event, the officers had a right to answer the telephone calls as a part of their investigative duties. Martinez testified that he thought the caller might have been the owner or someone who knew the owner. We cannot fault the police officials for properly attempting to locate the owner of the apartment and inform him of the incident.[2]

■ Finally, appellant contends that, even assuming arguendo probable cause existed after several telephone calls, there were no exigent circumstances which would justify a warrantless search. We have reviewed the record and agree. As noted above, our courts have long recognized the need for a search warrant except in the most exigent circumstances. *State v. Miller,* 110 Ariz. 491, 520 P.2d 1115 (1974). The law requires the interposition of an impartial magistrate between the police officer and the individual in order to objectively weigh the need to invade the privacy of a home. *State v. Gillin,* 112 Ariz. 348, 541 P.2d 1150 (1975). The transcript reflects that the burglary investigation ceased after the first few telephone calls and was replaced by a drug inquiry. The search in which the heroin was found was pursuant to the latter investigation.

Although Lt. Ronquillo testified that he could not locate a magistrate at the time he desired to initiate the search, it is clear that the requisite exigent circumstances for a warrantless search did not exist. No one was in the apartment. There was no danger that the evidence sought would be destroyed, nor was there any physical danger to the officers. The house was immovable, thus distinguishing this case from those in-

---

2. The fact that Martinez did not identify himself as a policeman perhaps reflected poor judgment on his part, as did certain state-

ments of Ronquillo, but does not amount to reversible error.

volving vehicular searches made on probable cause. Exigent circumstances cannot exist under such conditions. *State v. Jackson*, 210 N.W.2d 537 (Iowa 1973). Rather, the residence could easily have been secured to prevent access to the premises or destruction of evidence. *State v. Smith*, 112 Ariz. 531, 544 P.2d 213 (1975).

There was absolutely no evidence introduced at trial that the magistrates were to be out of the area for a prolonged period of time.[3] One of the judges was actually present at his residence in the county. Mere inconvenience or delay in securing a search warrant must be suffered before the rights of the citizen are violated. *State v. Peele*, 10 Wash.App. 58, 516 P.2d 788 (1973). The warrantless search for drugs violated the Fourth Amendment and the fruits of this search should have been excluded.

■ Appellant's second major ground for appeal is that the instant case should have been dismissed pursuant to Rule 8, Rules of Criminal Procedure, 17 A.R.S.[4] He argues that the original complaint No. 8287 was dismissed in order to stop the running of the time limits of Rules 8.2 and 8.3, rather than moving for a continuance pursuant to Rule 8.4(a) (defendant out of jurisdiction).[5] He continues by stating that since Rule 16.7(d) appears to allow dismissals without prejudice only when the dismissal is on some ground other than a Rule 8 violation, the dismissal of complaint

No. 8287 must have been with prejudice. Therefore, complaint No. 8349 (the present cause) should never have been filed.[6]

Appellee correctly notes that even assuming arguendo that the original dismissal was a violation of Rule 8, although the language of Rule 16.7(d) may support appellant's position, the law does not. In *State ex rel. Berger v. Superior Court*, 111 Ariz. 335, 529 P.2d 686 (1974), our Supreme Court stated:

> "If Rule 16.7(d) appears to be in conflict with Rule 8, by this opinion we hold that Rule 8 applies and the prosecution may be dismissed without prejudice even for violations of Rule 8 when the trial court, in its discretion, directs." 111 Ariz. at 341, 529 P.2d at 692.

Subsequent appellate decisions have either upheld dismissals without prejudice, or treated Rule 8 violations as technical error not requiring dismissal at all. *See, State v. Mitchell*, 112 Ariz. 592, 545 P.2d 49 (1976); *State v. Avriett*, 25 Ariz.App. 63, 540 P.2d 1282 (1975); *State v. Armenta*, 25 Ariz.App. 62, 540 P.2d 1281 (1975).

These cases, coupled with the fact that appellant did not claim that he suffered actual prejudice, lead us to conclude that the trial court did not err in denying the motion to dismiss.

Reversed.

HOWARD, C. J., and HATHAWAY, J., concur.

---

3. It appears that one magistrate was in Santo Tomas, Mexico, approximately 100 miles south of Nogales, while another was in Tucson.

4. As this case was filed prior to midnight, July 31, 1975, the 1973 Arizona Rules of Criminal Procedure are applicable.

5. At the time of the original complaint the State was unable to proceed as Mr. Mankel was being held by Federal authorities in Oklahoma.

6. Complaints No. 8287 and 8349 were identical.