688 P.2d 1030

**The STATE of Arizona, Appellee,**

v.

**Charlie Ray TURNER, Appellant.**

**No. 2 CA–CR 3197.**

Court of Appeals of Arizona, Division 2.

May 8, 1984.

Review Denied Sept. 18, 1984.

Robert K. Corbin, Atty. Gen. by Bruce M. Ferg, Tucson, for appellee.

Davis, Siegel & Gugino, P.C. by Michael L. Piccarreta and Carla Ryan, Tucson, for appellant.

## OPINION

HOWARD, Judge.

This appeal questions the legality of a warrantless search of appellant's property while he was on probation.

Appellant had been convicted in 1981 of unlawful possession of marijuana and placed on probation for two years. In September 1982 appellant was involved in an automobile collision and was arrested when a routine police check revealed two warrants for traffic violations. Appellant was taken to CVC (Correctional Volunteer Center) at the jail for booking on the traffic warrants. His luggage was placed in the trunk of the police car and taken to CVC with him since his automobile was inoperable and there were no alternatives at the time. A police officer at the scene of the accident was approached by a Tucson Electric Power Company employee who had heard the collision and had offered assistance prior to the arrival of the police. The TEP employee told the police officer that when he had asked appellant if he needed any help following the accident, appellant, who was by the trunk of his car and handling his luggage, handed the TEP employee a white canvas bag approximately 12 inches by 18 inches and asked the TEP employee to "stash it" for him, which the employee refused to do. The TEP employee further stated that the contents of the bag felt like a powder, like flour.

The police officer then called CVC and transmitted this information to the arresting officer. The probation department was informed and a verbal hold was put on appellant. Upon arriving at CVC, appellant telephoned his sister-in-law and requested that she pick up his luggage. A short time later she arrived and requested the suitcases but was refused. Appellant's luggage was removed from the police car and placed on the ground. Two narcotics detector dogs were brought in to "sniff" the suitcases. Both dogs sniffed the bags twice but, although they showed some interest, they did not sit and bark which is the positive sign for drugs. Appellant's sister-in-law again asked for the luggage but was refused by the police who told her that they were investigating the possibility of drugs.

The police then contacted the probation department and spoke with appellant's probation officer. Based on information from police regarding the car accident, the traffic warrants and the TEP employee's statement, two Pima County probation officers went to CVC to conduct a search of appellant's luggage pursuant to a regulation in the "conditions and regulations" of appellant's probation requiring him to "submit person and property to search and seizure at any time of the day or night when so requested by a probation officer, with or without warrant and with or without probable cause." The probation officers then proceeded to search the bags. During this search the police surrounded the probation officers and assisted them by helping to open one of the bags. The probation officers found contraband, made an inventory of it and passed it on to police officers for testing.

Upon appellant's waiving his right to trial by jury, the case was submitted to the court on testimony contained in the transcript of his motion to suppress and some additional evidence offered on appellant's behalf. From convictions of unlawful possession of cocaine for sale of a value greater than $250 and unlawful transportation of cocaine of a value greater than $250, this appeal followed.

■ Appellant contends that the initial detention of his luggage was unlawful because a police officer cannot without probable cause seize and detain property, and refuse to release it upon request of the owner. His position is based on the premise, which was also accepted by the trial court without much consideration, that the police action was taken without probable cause. This premise is erroneous. The facts known to the police at the time are as follows. Appellant had been involved in a traffic accident and appeared to be under the influence of some intoxicant. A TEP employee had informed the police that ap-

pellant had attempted to have the employee hide something for him. The object, a canvas bag, felt like flour to the TEP worker, and appellant used the term "stash" which, though not limited to the criminal drug milieu, has its greatest use there. Appellant demonstrated an inordinate desire to keep the bag secret. He first placed it inside his shirt and then spent a long time fumbling with the luggage in his trunk. He even sought to leave the scene of an automobile accident in which he had been injured to make arrangements for the disposition of his luggage.

■ The United States Supreme Court has recently reiterated that probable cause is a practical, not a technical concept and that only the probability of criminal activity is required. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Appellant's obsessive concern with his luggage, combined with the TEP employee's statement to police and the exigency of the situation in which the contraband was about to disappear with appellant's sister-in-law, provided an adequate legal basis for the warrantless seizure of the bags.

■ Appellant takes great solace in the fact that the police stated in a transcript of an interview, submitted in evidence at the motion to suppress, that they did not think they had probable cause to permit a search of the luggage. Reliance on this theory is misplaced. The standard of probable cause is not a subjective standard but an objective one. *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969); *State v. Pederson*, 102 Ariz. 60, 424 P.2d 810 (1967); *State v. Vaughn*, 12 Ariz.App. 442, 471 P.2d 744 (1970); *State v. Pine*, 8 Ariz.App. 430, 446 P.2d 940 (1968); It merely requires that the facts available to the police would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of crime, and it does not demand any showing that such a belief be correct or more likely true than false. A practical, nontechnical probability that incriminating evidence is involved is all that is required and it is not necessary that a police officer be possessed

of near certainty as to the seizable nature of the items. *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). In *Klingler v. United States*, 409 F.2d 299 at 304 (8th Cir.1969), which we quoted with approval in *State v. Vaughn*, supra, the court stated:

"Because probable cause for an arrest is determined by objective facts, it is immaterial that Kisecker, at the hearing on the motion to suppress, testified that he did not think he had 'enough facts' upon which to arrest Klingler for armed robbery. His subjective opinion is not material. See, *Terry v. State of Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868 [1880], 20 L.Ed. 889 (1968)." 12 Ariz.App. at 444, 471 P.2d 744.

We believe the facts in this case indicate that there was probable cause for the initial warrantless seizure of the luggage. In view of the facts known to the police at the time and having probable cause to believe the contraband was about to disappear with appellant's sister-in-law, the police were justified in seizing the suitcases they suspected contained drugs. *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *State v. Bustamante*, 11 Ariz.App. 129, 462 P.2d 822 (1970).

■ Appellant further asserts that the warrantless search by probation officers was rendered improper by the degree of involvement by police in the situation. It is argued that the Fourth Amendment requires this result. The Fourth Amendment to the United States Constitution does not prohibit all searches and seizures, only those that are unreasonable. U.S.C.A. Const.Amend. 4. This court has consistently adhered to the view that reasonableness is to be determined by the facts and circumstances presented in each case. *State v. Sainz*, 18 Ariz.App. 358, 501 P.2d 1199 (1972); *State v. Coflhin*, 3 Ariz.App. 182, 412 P.2d 864 (1966); *State v. Taylor*, 2 Ariz.App. 314, 408 P.2d 418 (1965); *State v. Baca*, 1 Ariz.App. 16, 398 P.2d 924 (1965).

■ In the case now before us, appellant, pursuant to the "conditions and regu-

lations" of his probation, was required to "submit person and property to search and seizure at any time of the day or night when so requested by a Probation Officer, with or without warrant and with or without probable cause." The purpose of such a search requirement is to ascertain whether the probationer is complying with the terms of his probation. *State v. Jeffers*, 116 Ariz. 192, 568 P.2d 1090 (App.1977). While appellant is on probation his expectations of privacy are less than those of other citizens not so categorized. *State v. Montgomery*, 115 Ariz. 583, 566 P.2d 1329 (1977).

A probation officer has a duty to determine whether a probationer is complying with all of the conditions of his probation. *State v. Tarrell*, 74 Wis.2d 647, 247 N.W.2d 696 (1976). The court in *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir.1975) stated:

> "... some forms of search by probation officers are not only compatible with rehabilitation, but, with respect to those convicted of certain offenses such as possession and distribution of narcotics, are also essential to the proper functioning of a probationary system." 521 F.2d at 265.

In the instant case, appellant had been placed on probation after pleading guilty to unlawful possession of marijuana. One of the conditions of his probation instructed appellant to "avoid contact with, or use of, marijuana, dangerous drugs, or narcotics...." The similarity between appellant's prior offense and this offense, and the probation officer's awareness that appellant was suspected by police of being in possession of drugs, was a reasonable basis for the probation officer's search to determine whether appellant had complied with the conditions of his probation.

In *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.1975), a parole officer and two police officers searched a parolee's residence without a warrant, found drugs, and subsequently arrested the parolee for their possession. The Ninth Circuit Court of Appeals held that the evidence was legally obtained.

In *United States v. Consuelo-Gonzalez*, supra, a woman on probation for narcotics violation was required as a condition of her probation to consent to searches of her person and property upon the request of law enforcement officers. Federal drug agents, acting on information that she was again trafficking in narcotics, took advantage of this probation condition and searched her home. The court reversed her conviction on the basis that her probation officer did not participate in the search. On the issue of whether a probationer's residence could properly be searched without a warrant, the court applied the same standard of reasonableness as applied in *Latta*, supra, and determined that it could.

Our Supreme Court in *State v. Montgomery*, supra, upheld a condition of probation that required a probationer to submit to search and seizure without warrant by any police officer in addition to the search and seizure without a warrant by a probation officer, stating:

> "Such warrantless searches by police may be counter-productive both in rehabilitating the probationer and may interfere with the supervision of the probationer by the court through the court's probation officers. If there is a need because of distance or time, the probation officer can always authorize such a warrantless search by the police officer. The provisions of Condition 11 authorizing the warrantless searches by police officers, however, should be sparingly given.
>
> We do not agree, however, that the law in Arizona prevents this practice." 556 P.2d at 1331.

Although the court in *Consuelo-Gonzalez* and *Latta* stopped short of permitting such warrantless searches to be conducted by police, without the probation officer's cooperation, it did not preclude police bringing matters justifying a search to the probation officer's attention and accompanying him

in the search. The court in *Consuelo-Gonzalez* stated:

"Probation, however, has law enforcement aspects. Because of this, conditions which serve to protect the public from recidivism by the probationer or to deter others by way of example are not contrary to the purposes of the Act so long as all the conditions construed together serve substantially the purpose of rehabilitation.

■ Moreover, nothing said here is intended to preclude mutually beneficial cooperation between probation officers and other law enforcement officials. For example, a proper visitation by a probation officer does not cease to be so because he is accompanied by a law enforcement official. Nor is an ordinary law enforcement official precluded from seeking the probationer's consent to conduct a search provided no coercion, actual or threatened, is employed. The probationer's refusal to accede to such a request makes it necessary either that the matter be referred to the probation officer or that a warrant be obtained." 521 F.2d at 266–267.

■ There is nothing in the record in this case to suggest that this search was not a search conducted in a proper manner and for a proper purpose by appellant's probation officer. The probation officer had been advised by police of the car accident, the traffic warrants and the TEP employee's statement concerning appellant's request that he "stash" a canvas bag for him. Thus, the probation officer had a duty to determine whether appellant was complying with the regulations and conditions of his probation and, under the circumstances, it was not unreasonable to conduct the search.

The search was not rendered invalid by the presence of police nor by the fact that the probation officer was aided by police in opening one of the bags. *Latta v. Fitzharris*, 521 F.2d 246 (9th Cir.1975); *State v. Jeffers*, 116 Ariz. 192, 568 P.2d 1090 (App.1977); *People v. Fortunato*, 50 A.D.2d 38, 376 N.Y.S.2d 723 (1975). Nei-

ther was it rendered invalid merely because the information which prompted it originated with the police. In the analogous case of *Sanderson v. State*, 649 P.2d 677 (Wyo.1982), the court said:

"Here, the police contacted the probation officer with information about appellant's possible possession of controlled substances. The police also conducted the search, in the probation officer's presence, after the probation officer had obtained consent to search from the appellant. The facts that the police contacted the probation officer and conducted the search are insignificant. When the police contacted the probation officer and advised her of Mr. Sanderson's possible possession of drugs, she had a duty to investigate immediately. If the police, a concerned citizen, or an informant relays information, the discretion to search becomes the probation officer's. The police officers here, in effect, became the probation officer's agents when they gave assistance to the probation officer at her request. In such circumstances, the police officers become a part of the probation process." 649 P.2d at 679. It is our opinion that appellant has no substantial legal basis for his claim that such cooperation between probation officers and the police will invalidate the probation officer's search.

Finally, appellant seeks to destroy the legitimacy of the search by claiming that a regulation of probation is not the equivalent of a condition of probation unless the sentencing judge has specifically included the regulation within his order, and that a probation officer cannot authorize the suspension of one's constitutional rights without judicial approval. These contentions are without merit.

A form entitled "Conditions and Regulations of Probation" was signed by appellant in January 1982. This form states: "The Court has ordered the following conditions", and enumerates seven conditions of probation. The seventh condition states that the probationer shall carry out the regulations of the probation officer, includ-

ing certain lettered requirements, of which requirement "k" is the warrantless search provision. This court had the occasion to construe an identical form in *State v. Druke*, 128 Ariz. 604, 627 P.2d 1102 (App. 1981):

"At a probation revocation hearing the trial court found that real party in interest had violated the regulations of his probation, but did not revoke his probation and refused to designate the previously open-ended offense a felony. The trial court's refusal to make the designation as requested by the deputy county attorney was based on its belief that only the first six paragraphs of the form used by Pima County constitute conditions and that paragraph seven of the "Conditions and Regulations of Probation" was not a condition of probation within the meaning ·of the plea agreement. We do not agree.

Paragraph seven requires a probationer to carry out the regulations of his probation officer and is a condition of probation. Since real party in interest failed to carry out the regulations, he violated a condition of probation." 128 Ariz. at 605, 627 P.2d 1102.

Thus, all items on the form are to be viewed as "conditions" of probation and both "conditions" and "regulations" are intended to have essentially the same status.

■ In support of his position, appellant argues that *State v. Druke,* supra, is inapplicable because, unlike the situation in *Druke,* in the present case the regulations were never set forth in the court order. This contention does not survive scrutiny. The comment to Rule 27.1, Arizona Rules of Criminal Procedure, 17 A.R.S., states:

"This provision is based on present practice and ABA, Standards Relating to Probation, at §§ 3.1(a) and 3.2(a). Ariz.Rev. Stat.Ann. § 13–1657(A) (Supp.1972) permits the sentencing court to impose 'such terms and conditions as it determines' including up to 1 year in jail. The usual practice in the superior courts of Pima and Maricopa counties is for the court to impose a few conditions such as to obey the rules or regulations imposed by the probation officer, to lead a law-abiding life, and occasionally, to consume no alcoholic beverages or to undergo mental or medical treatment. The probation officer then gives the defendant a standard set of regulations containing a few options and space for special regulations, explains them, and asks the defendant to sign a statement that he understands the conditions and regulations and the possible consequences of a violation and that he agrees to abide by the terms of his probation.

Rule 27.1 retains this general procedure. The court sets out the broad outlines and the probation officer fills in the details. Where there is no probation officer, the full burden falls on the court." 17 A.R.S. at 638–639.

Thus, all conditions on the form are to be considered as having been imposed by the court regardless of whether each provision was specifically stated on the record by the judge.

■ The fundamental principle established by Arizona decisions is that unless the terms of probation are such that they violate fundamental rights or bear no reasonable relationship whatever to the purpose of probation over incarceration, the appellate courts will not interfere with the trial court's exercise of discretion in the formulation of the terms and conditions of probation. *State v. Montgomery,* supra; *State v. Smith,* 129 Ariz. 28, 628 P.2d 65 (App.1981); *State v. Cummings,* 120 Ariz. 69, 583 P.2d 1389 (App.1978); *State v. Davis,* 119 Ariz. 140, 579 P.2d 1110 (App. 1978).

■ We therefore hold that the imposition of the warrantless search provision was a valid condition of probation. Accordingly, the warrantless search of appellant's luggage by his probation officer was not unlawful and the trial court correctly denied the motion to suppress.

Affirmed.

BIRDSALL, C.J., and HATHAWAY, J., concur.