IN THE

# Arizona Court of Appeals
## Division One

ARIZONA STATE UNIVERSITY BOARD OF REGENTS,
*Plaintiff/Appellant,*

*v.*

ARIZONA STATE RETIREMENT SYSTEM,
*Defendant/Appellee.*

No. 1 CA-CV 16-0239
FILED 5-11-2017

Appeal from the Superior Court in Maricopa County
No. LC2012-000689-001
The Honorable Crane McClennen, Judge *Retired*

**REVERSED AND REMANDED**

COUNSEL

Osborn Maledon PA, Phoenix
By Thomas L. Hudson, Eric M. Fraser

Arizona State University, Office of General Counsel, Tempe
By Lisa K. Hudson
*Co-counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Jothi Beljan
*Counsel for Defendant/Appellee*

## OPINION

Presiding Judge Peter B. Swann delivered the opinion of the court, in which Judge Kent E. Cattani and Judge Donn Kessler joined.

**S W A N N**, Judge:

**¶1** In *Arizona State University v. Arizona State Retirement System*, 237 Ariz. 246 (App. 2015) (hereinafter "*ASU v. ASRS*"), we held that the Arizona State Retirement System ("ASRS") wrongly collected $1,149,103 from Arizona State University (the "University"). This appeal concerns the rate of prejudgment interest that applies to ASRS's liability for the refund. The superior court held that the refund was in the nature of a "judgment," and not a "debt" — a distinction that determines the applicable interest rate under A.R.S. § 44-1201. We disagree, and hold that ASRS's over-collection of money created a debt that was not dependent on the existence of a judgment. We therefore reverse and remand for entry of judgment with prejudgment interest computed at 10%.

## FACTS AND PROCEDURAL HISTORY

**¶2** The underlying litigation arose from an invoice ASRS sent to the University for a purported actuarial unfunded liability resulting from 17 employees' participation in the University's termination incentive program. *See generally* A.R.S. § 38-749; *ASU v. ASRS*, 237 Ariz. 246. ASRS determined the unfunded liability to be $1,149,103 and demanded payment within 90 days. *ASU v. ASRS*, 237 Ariz. at 249, ¶ 9. It also asserted under § 38-749 that ASU would owe ASRS 8% interest on any "balance" until the $1,149,103 was paid in full. The University paid the invoice and then pursued an administrative appeal. *Id.* at 223, ¶ 9.

**¶3** In *ASU v. ASRS*, we concluded that ASRS was required to follow the Administrative Procedure Act's rulemaking procedures before enforcing the policy under which it charged the University. 237 Ariz. at 253–54, ¶ 32. We remanded the case to the superior court with instructions "to enter an order directing ASRS to refund $1,149,103 to the University, with interest thereon if and as authorized by law — an issue the superior court should address on remand." *Id.* at 254, ¶ 33.

¶4        The superior court entered judgment for the original invoice — $1,149,103 — together with prejudgment interest at the rate of 4.25%. The only issue before us in this appeal is whether the court chose the correct interest rate.

## DISCUSSION

¶5        The parties agree that the interest rate is determined by A.R.S. § 44-1201.  That statute provides in pertinent part:

> A.  Interest on any loan, indebtedness or other obligation shall be at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to.  Interest on any judgment that is based on a written agreement evidencing a loan, indebtedness or obligation that bears a rate of interest not in excess of the maximum permitted by law shall be at the rate of interest provided in the agreement and shall be specified in the judgment.

> B.  Unless specifically provided for in statute or a different rate is contracted for in writing, interest on any judgment shall be at the lesser of ten per cent per annum or at a rate per annum that is equal to one per cent plus the prime rate as published by the board of governors of the federal reserve system in statistical release H.15 or any publication that may supersede it on the date that the judgment is entered. The judgment shall state the applicable interest rate and it shall not change after it is entered.

> . . . .

> F.  If awarded, prejudgment interest shall be at the rate described in subsection A or B of this section.

(Emphases added.)

¶6        The University argues that once it paid the improperly issued invoice, ASRS became "indebted" to it in the amount of $1,149,103, entitling it to 10% interest under subsection (A).  ASRS contends that the superior court correctly decided that the University was entitled only to the prime rate plus 1% (*i.e.*, 4.25%) — the rate applicable to a "judgment" under subsection (B).

¶7        We review this issue de novo. *Hall v. Elected Officials' Ret. Plan*, 241 Ariz. 33, 46, ¶ 38 (2016); *Metzler v. BCI Coca-Cola Bottling Co. of Los Angeles*, 235 Ariz. 141, 144, ¶ 13 (2014). "If the plain language of a statute is clear and unambiguous when considered in context, we do not resort to other methods of statutory construction." *Newman v. Select Specialty Hosp.-Ariz., Inc.*, 239 Ariz. 558, 566, ¶ 35 (App. 2016). We interpret statutes to avoid rendering "any of its language mere 'surplusage,' [and instead] give meaning to 'each word, phrase, clause, and sentence . . . so that no part of the statute will be void, inert, redundant, or trivial.'" *In re Estate of Zaritsky*, 198 Ariz. 599, 603, ¶ 11 (App. 2000) (citation omitted).

¶8        Until 2011, A.R.S. § 44-1201 did not differentiate between "judgments" and "loans, indebtedness, or other obligations." *See Metzler*, 235 Ariz. at 145, ¶ 14. The Legislature then amended § 44-1201, "uncoupling 'judgments' from 'loans, indebtedness, or other obligations' so as to 'limit' the interest applicable to judgments." *Id.* at ¶ 15 (citing Arizona Senate Fact Sheet, S.B. 1212, 50th Leg., 1st Reg. Sess. (Apr. 13, 2011)). In *Metzler*, the supreme court held under subsection (A) that prejudgment interest is awarded at 10% on any loan ("money lent at interest"), indebtedness ("something (as an amount of money) that is owed"), or other obligation ("things of the same nature or class as 'loan' and 'indebtedness'"). 235 Ariz. at 145–46, ¶¶ 18–19 (citations omitted). And under subsection (B), prejudgment interest is currently awarded at 4.25% on "any judgment," which our supreme court concluded means an amount that "depends on a judgment for its existence." *See id.* at 146, ¶ 19.

¶9        Taken alone, subsection (A) might be read as a contractual gap-filler for debt obligations that are paid without resort to litigation, and subsection (B) could be read to define the interest rate for liabilities that are reduced to judgments. But read as a whole, § 44-1201 makes clear that subsection (B) is not triggered every time a judgment is entered. Subsection (F) states that "prejudgment interest shall be at the rate described in subsection A *or* B." (Emphasis added.) Were we to hold that subsection (B) applies to all liabilities reduced to judgments, subsection (F) would have no meaning. Therefore, a person who successfully obtains a judgment to collect an "indebtedness" is entitled to the 10% interest rate even though litigation and a judgment was necessary to collect the debt.

¶10        The University argues that "indebtedness" under subsection (A) includes all liquidated claims once they are reduced to judgments. *See Viad Corp. v. MoneyGram Int'l, Inc.*, 1 CA-CV 15-0053, 2016 WL 6436827, at *8, ¶¶ 42–45 (Ariz. App. Nov. 1, 2016). Though liquidated claims will very often qualify for prejudgment interest under subsection (A), we decline to

4

rewrite the statute to substitute the three terms the Legislature wrote — "loan," "indebtedness," and "other obligation" — with the single term "liquidated sum." Had the Legislature intended subsection (A) to apply to all "liquidated" claims, it would have said so. *See, e.g.*, A.R.S. §§ 44-1201(D)(1) ("A court shall not award . . . [p]rejudgment interest for any *unliquidated*, future, punitive or exemplary damages that are found by the trier of fact." (emphasis added)), 47-2718(A) ("Damages for breach by either party may be *liquidated* in the agreement . . . ." (emphasis added)).

**¶11**        "Liquidated" damages can exist even when there is not an "indebtedness." *See, e.g.*, *Precision Heavy Haul, Inc. v. Trail King Indus., Inc.*, 224 Ariz. 159, 161–62, ¶¶ 7, 14 (App. 2010). Therefore, while the majority of cases involving liquidated damages may indeed be cases involving "indebtedness," we cannot say that the two terms are congruent.

**¶12**        Instead, consistent with *Metzler*, we hold that courts must look to the fundamental nature of the underlying obligation to determine which subsection applies. Here, while the litigation and resulting judgment may have been necessary to secure ASRS's refund of the money that the University paid, the obligation itself does not "depend on the judgment for its existence." *Metzler*, 235 Ariz. at 145, ¶ 17.

**¶13**        ASRS's obligation has all indicia of a "debt." ASRS cast the original demand that created the overpayment, giving rise to the need for refund, as an amount "due" within 90 days. ASRS's own letter stated: "**Payment is due within 90 days of the invoice**. If not paid in full within that time, the ASRS will assess interest on the balance at a rate of eight percent (8%) until the amount is paid in full." (Emphasis in original.) It is difficult to imagine a better fit for the word "indebtedness" than an amount "due" within a time certain that carries a fixed interest rate if any "balance" remains outstanding after the due date. And the wording of ASRS's letter was not merely a rhetorical characterization of a generic demand — A.R.S. § 38-749(C) established the deadline for payment of actuarial unfunded liabilities, the default interest rate, and the concept of an "amount due." Therefore, had ASRS's demand been meritorious, the underlying claim would have been one by ASRS against the University for nonpayment of an indebtedness and ASRS would have received the benefit of the 10% interest rate under A.R.S. § 44-1201(A).

**¶14**        We see no reason to treat a claim for refund of an overpayment differently from the claim that gave rise to the overpayment. Properly applied, A.R.S. § 38-749 creates "indebtedness" owed by employers to ASRS. Claims for refunds of overpayments on such

indebtedness are likewise claims for indebtedness governed by A.R.S. § 44-1201(A).[1]

## CONCLUSION

**¶15**        The University was entitled to 10% prejudgment interest on an "indebtedness" under A.R.S. § 44-1201(A).  We therefore reverse the superior court's order awarding prejudgment interest at 4.25% and remand for modification of the interest calculation.

**¶16**        The University requests an award of costs on appeal under A.R.S. § 12-341.  ASRS argues the University was not a "successful party to a civil action" under § 12-341.  ASRS did not raise this argument in the first appeal, and it is therefore waived.  *Carrillo v. State*, 169 Ariz. 126, 132 (App. 1991) (failing to raise an issue in first appeal waives it as to the second appeal).  We award the University its costs under § 12-341, upon its compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[1]        Although ASRS urges "equities" favoring an award of interest at 4.25%, it offers no authority for the proposition that equitable considerations bear on the applicable interest rate.  *Cf. Employer's Mut. Cas. Co. v. McKeon*, 170 Ariz. 75, 77 (App. 1991) ("[P]rejudgment interest on a liquidated claim is a matter of right and not a matter of discretion.").