EPPICH, Presiding Judge:
¶1 The state appeals the trial court's ruling suppressing evidence police found while searching Raymond Verbon Morris III's backpack after his shoplifting arrest. Because the court erred in concluding there was no probable cause to support Morris's arrest, we vacate its ruling and remand the matter for further proceedings.
*1062 Factual and Procedural Background
¶2 In reviewing a motion to suppress, we view the evidence in the light most favorable to upholding the trial court's ruling. State v. Peoples , 240 Ariz. 244, ¶ 7, 378 P.3d 421 (2016). On September 29, 2017, while monitoring surveillance video, a retail store's loss-prevention employee saw Morris select a pair of sunglasses from a display, cut off and discard the price tag, and put them on. The employee called police to report that Morris was shoplifting. She continued to watch Morris and saw him select a package of condoms and an energy drink from the store's shelves and put them in his shopping cart on top of his backpack, which he had placed there after wearing it into the store. Later, she saw Morris manipulate the backpack, and the condoms and energy drink were no longer visible; the employee believed Morris had placed the items into the backpack. When police arrived, the loss-prevention employee showed the officer video of Morris cutting the price tag off the sunglasses. She also told the officer she had seen Morris conceal items in his backpack and showed him the portions of the surveillance video she believed showed the concealment.
¶3 In that video, Morris selected two small boxes from shelves in the pharmacy and placed them in the cart with the backpack. One of the boxes-purple with a white side panel-was visible in front of the backpack as Morris later navigated through the toy department.[1] Morris remained in view as he pushed the cart out of the toy department and down a main aisle to the electronics department. As he traveled through the electronics department for the next eighty seconds, Morris and the cart were obscured behind displays most of the time, and when the cart was briefly visible during that time, the view of the purple and white box was obscured. Morris then pushed the cart down an aisle towards the camera and came back into view; his hands were manipulating the backpack, and when the place where the purple and white box had been came into view, the box was missing.
¶4 Morris put several other items in the cart's basket during the two hours he was in the store, but he returned many of them to the store's displays before approaching the store's self-checkout registers. Once at a register, Morris scanned the items remaining in the cart but not the sunglasses, energy drink or condoms. He then attempted to pay for the items he had scanned, but the credit card he used was declined several times. While Morris was still at the register, police officers approached him, told him they suspected him of shoplifting and escorted him to the loss-prevention office. There, they formally placed him under arrest for shoplifting based on his failure to pay for the sunglasses and concealment of items in the backpack.
¶5 After a check of Morris's criminal history revealed previous convictions on similar charges, police decided to arrest Morris for a felony. They then searched the backpack and found the condoms and energy drink, and also narcotics, drug paraphernalia and a loaded handgun. A grand jury indicted Morris on counts of prohibited possession of a weapon, possession of methamphetamine, possession of heroin and possession of drug paraphernalia.
¶6 Morris filed a motion to suppress the items police had found in his backpack, arguing his arrest was unlawful and that, in any event, the search was not valid as incident to the arrest. After an evidentiary hearing, the trial court granted the motion to suppress, finding there had been no probable cause to arrest Morris for shoplifting and the evidence from the backpack was inadmissible as fruit of the unlawful arrest. The court stated:
Defendant did not conceal the sunglasses, but instead, placed the sunglasses in plain view on his head. Furthermore, neither the deputies, nor the loss prevention officers, saw Defendant conceal the [condoms and energy drink], and therefore had not yet been able to determine if they were, in fact, concealed. In fact, it appears that loss prevention personnel took no steps to determine whether the [condoms and energy drink] were among the many *1063 items that Defendant had apparently returned to store shelves.
Because Defendant was still at the point of sale, he had not yet taken the items from the store without paying the purchase price. In fact, he maintained the ability to pay for all of the items, return the items, or leave the items at the register when the debit card was declined. While he had removed a price tag, Defendant could have sought assistance to pay the purchase price, returned the glasses, or taken any other action that did not constitute theft. In short, because Defendant was detained before either leaving or attempting to leave the store with unpaid items, there was no probable cause to arrest him for shoplifting.
¶7 After the trial court granted the state's subsequent motion to dismiss the case without prejudice, the state timely appealed the court's grant of Morris's motion to suppress. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A) and 13-4032(6).
Probable Cause
¶8 The state argues police had probable cause to arrest Morris for shoplifting the sunglasses and the items found in the backpack, contending that a person need not attempt to leave a store without paying to commit shoplifting. As to the sunglasses, the state notes that Morris cut off and discarded the price tag, put the glasses on his head, and attempted to pay for other items without paying for the sunglasses, and concludes that "[a] reasonable person, applying common sense, would understand" that Morris was shoplifting them. The state also argues it was reasonable to believe that Morris had committed shoplifting by concealing items in the backpack because the condoms and energy drink were in the cart, Morris was then seen doing something with his backpack, and the items were no longer there.
¶9 The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures." State v. Dean , 206 Ariz. 158, ¶ 8, 76 P.3d 429 (2003). Thus, an arrest must be based on probable cause. State v. Superior Court , 149 Ariz. 269, 273, 718 P.2d 171, 175 (1986). In general, a police officer may arrest a person without a warrant only if the officer has probable cause to believe that an offense has been committed and the person to be arrested is the offender. See A.R.S. § 13-3883(A) (codifying probable cause requirement for arrest). Probable cause is "information sufficient to justify belief by a reasonable man that an offense is being or has been committed," State v. Aguilar , 228 Ariz. 401, ¶ 14, 267 P.3d 1193 (App. 2011) (citing Ker v. California , 374 U.S. 23, 35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963) ), and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," State v. Sisco , 239 Ariz. 532, ¶ 15, 373 P.3d 549 (2016) (quoting Illinois v. Gates , 462 U.S. 213, 243 n.13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) ). "Probable cause is something less than the proof needed to convict and something more than suspicions." State v. Aleman , 210 Ariz. 232, ¶ 15, 109 P.3d 571 (App. 2005) (quoting State v. Howard , 163 Ariz. 47, 50, 785 P.2d 1235, 1238 (App. 1989) ). The probable cause standard is objective, not subjective, and whether an officer believed there were sufficient facts to support an arrest is not material. State v. Turner , 142 Ariz. 138, 141, 688 P.2d 1030, 1033 (App. 1984). In applying the standard, we consider whether the collective knowledge of law enforcement officers at the time of arrest was sufficient to establish probable cause. Aleman , 210 Ariz. 232, ¶ 15, 109 P.3d 571.
¶10 The Fourth Amendment requires a court to suppress evidence that is the fruit of an unlawful arrest. State v. DeWitt , 184 Ariz. 464, 470, 910 P.2d 9, 15 (1996) (citing Maryland v. Macon , 472 U.S. 463, 468, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985) ). While in general we review rulings on motions to suppress for abuse of discretion, whether a probable cause determination comports with the Fourth Amendment is a mixed question of law and fact that we review de novo. See State v. Cheatham , 240 Ariz. 1, ¶ 6, 375 P.3d 66 (2016) ; see also Miller v. Fenton , 474 U.S. 104, 113-15, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985) (discussing why de novo review is appropriate for certain constitutional mixed questions of fact and law). We defer, however, to the trial court's factual findings, *1064 including whether witnesses were credible and whether the inferences drawn by a police officer were reasonable. State v. Teagle , 217 Ariz. 17, ¶ 19, 170 P.3d 266 (App. 2007).
¶11 Arizona's shoplifting statute provides, in relevant part:
A person commits shoplifting if, while in an establishment in which merchandise is displayed for sale, the person knowingly obtains such goods of another with the intent to deprive that person of such goods by:
1. Removing any of the goods from the immediate display or from any other place within the establishment without paying the purchase price; or
....
3. Paying less than the purchase price of the goods by some trick or artifice such as altering, removing, substituting or otherwise disfiguring any label, price tag or marking; or
....
5. Concealment.
A.R.S. § 13-1805(A).
¶12 Here, police had probable cause to believe that Morris had concealed at least one of the store's items in his backpack. While the surveillance video does not clearly show that Morris stowed the purple and white box in his backpack, it disappeared from sight during an eighty-second span that ended with Morris manipulating the backpack. The fact that the box vanished from the cart within such a narrow time span increased the probability that Morris's manipulation of the backpack was related to its disappearance.[2] Moreover, the fact that Morris cut the tag off the sunglasses, discarded the tag, put them on, and failed to include them among the items he presented for purchase strongly suggests that he intended to shoplift, markedly increasing the probability that the disappearance of the box was not innocent. See State v. Sabartinelli , 23 Ariz. App. 436, 440, 533 P.2d 1173 (1975) (probable cause may be based on "furtive gesture coupled with prior reliable information" which "give[s] a criminal connotation" to gesture). Under these circumstances, a belief that Morris had concealed the box was entirely reasonable. See Aguilar , 228 Ariz. 401, ¶ 14, 267 P.3d 1193 ; Sisco , 239 Ariz. 532, ¶ 15, 373 P.3d 549.
¶13 Morris joins the trial court in focusing on the fact that no one actually saw him conceal items in the backpack. But that the officer could not determine with certainty from the surveillance video that Morris was placing the store's items in his backpack did not vitiate probable cause or render the arrest unlawful. See Turner , 142 Ariz. at 141, 688 P.2d at 1033. And although the court found it compelling that no one had verified that Morris had not returned the box to a shelf in light of the fact he had done so with other items, a probable cause determination "does not deal with hard certainties, but with probabilities." State v. Espinosa-Gamez , 139 Ariz. 415, 417, 678 P.2d 1379, 1381 (1984) (quoting Gates , 462 U.S. at 231, 103 S.Ct. 2317 ). Police therefore did not have to eliminate every possible innocent explanation for the disappearance of the box to have probable cause to believe that Morris had concealed it. See State v. Pederson , 102 Ariz. 60, 65, 424 P.2d 810, 815 (1967) (probable cause for arrest does not require officer to "personally verify every bit of information").
¶14 Morris next argues that regardless of any justification for believing he intended to shoplift, he simply had not completed the offense, and therefore there was no probable cause to arrest him for it. Morris asserts that "goods are only 'obtained' once the person passes the point of sale because it is at that point that the ownership interest in the property transfers to [the] customer." See § 13-1805(A) (requiring shoplifting offender to "knowingly obtain[ ]" goods); A.R.S. § 13-1801(A)(10) (defining "[o]btain" as "to bring about or to receive the transfer of any interest in property, whether to a defendant or to another"). Therefore, according to Morris, the customer must pass the point of sale to commit shoplifting under any *1065 of the alternatives in § 13-1805(A). Because Morris had not passed the point of sale, he contends police were only permitted to conduct a brief investigatory stop pursuant to Terry v. Ohio , 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to address his "arguably suspicious behavior."
¶15 At least for shoplifting by means of concealment under § 13-1805(A)(5), we conclude otherwise: a person need not pass the point of sale to "obtain" concealed goods. The plain language of § 13-1805(A)(5) expressly contemplates a situation where "the person ... obtains ... goods by ... [c]oncealment." See State v. Williams , 175 Ariz. 98, 100, 854 P.2d 131, 133 (1993) (in interpreting statute, language is best and most reliable indicator of meaning). Nothing in § 13-1805(A)(5) suggests that any act other than concealment-such as passing the point of sale-is necessary to obtain concealed goods. We therefore interpret § 13-1805(A)(5) to mean that the crime of shoplifting is complete at the time of concealment.
¶16 The history of the shoplifting statute supports our interpretation. The crime of shoplifting by concealment under § 13-1805(A)(5) derives from common-law larceny, and the elements of the crimes are substantially similar. See Sulavka v. State , 223 Ariz. 208, ¶¶ 13-19, 221 P.3d 1022 (App. 2009).[3] Under the common law, larceny is "the taking of the thing which is the subject of the crime from the possession of the owner into the possession of the thief; and ... an asportation thereof." Id. ¶ 14 (emphasis omitted) (quoting Pass v. State , 34 Ariz. 9, 10, 267 P. 206 (1928) ); see also Asportation , Black's Law Dictionary (10th ed. 2014) ("[t]he act of carrying away or removing"). Removing an item from a store's display and concealing it satisfies larceny's asportation requirement. Sulavka , 223 Ariz. 208, ¶ 17, 221 P.3d 1022. Because asportation of a store's goods can occur only once the goods are possessed, other courts have concluded that larceny is complete when goods are concealed. See State v. Hauck , 190 Neb. 534, 209 N.W.2d 580, 583 (1973) ("The cases indicate that concealing the goods in a fashion sufficient to place them under the complete and exclusive control of the defendant may be sufficient asportation to constitute larceny, no matter what part of the store it occurs in."); Haslem v. State , 391 So.2d 389, 390 (Fla. Dist. Ct. App. 1980) (movement of goods within a store, coupled with concealment, can be sufficient to prove theft). And our interpretation of the current shoplifting by concealment statute is further buttressed by the absence of even the minimal asportation requirement of common-law larceny. See State v. Allen , 1 Ariz. App. 161, 163, 400 P.2d 589 (1965) (prior version of shoplifting statute clearly omits element of asportation).
¶17 Morris nonetheless contends that we should "read into" § 13-1805(A)(5) a requirement that a person must pass the point of sale. As support for this contention, Morris notes that § 13-1805(A)(1)-(3) all explicitly contemplate some deficiency in payment for goods, which, according to Morris, cannot be determined until the person passes the point of sale. He concludes that a point-of-sale requirement should therefore also be read into § 13-1805(A)(4) and (5). While Morris cites various rules of statutory construction in support of this contention, he does not explain why they support it, and we are unaware of any that do. If anything, the absence of payment language in § 13-1805(A)(5) expressly included in § 13-1805(A)(1)-(3) suggests that the absent language should not be read into § 13-1805(A)(5). See State v. Fragozo , 197 Ariz. 220, ¶ 5, 3 P.3d 1140 (App. 2000) (express provision in one statute indicated legislature did not intend provision to apply in another, related statute where provision absent). Moreover, reading such a requirement into § 13-1805(A)(5) would render it superfluous, because § 13-1805(A)(1) provides for guilt when a person passes the point of sale with unpurchased items, whether the items are concealed or not. See Ariz. State Univ. Bd. of Regents v. Ariz. State Ret. Sys. , 242 Ariz. 387, ¶ 7, 396 P.3d 623 (App. 2017) (statutes should be interpreted as to avoid rendering language surplusage).
*1066 ¶18 Finally, Morris argues that if a customer's concealment of items constitutes shoplifting before passing the point of sale, any shopper who places items in a reusable bag while shopping would be guilty. See § 13-1805(B) (creating presumption that person acted with necessary intent to shoplift if person "[u]ses [a] ... container ... to facilitate the shoplifting"). Morris contends-and we obviously agree-that such a result would be absurd. See State v. Winegardner , 243 Ariz. 482, ¶ 32, 413 P.3d 683 (2018) (Lopez, J., dissenting in part and concurring in the result) (discussing shoppers' implied license to handle goods in retail stores). Morris's argument presumes, however, that any time a customer places an item in a shopping bag such that the item is out of view it must constitute "concealment" under § 13-1805(A)(5). While the word "concealment" can, in some contexts, simply mean removing an item from sight, it can also mean removing an item from notice or hiding it. Concealment , Black's Law Dictionary (10th ed. 2014). A customer who uses a reusable shopping bag to carry his items from the display area to the point of sale is not hiding the fact that he has the store's merchandise in his bag, even if the individual items are not readily visible. We have no trouble distinguishing the conduct of such customers from Morris's conduct here: enclosing some of the store's goods in his own backpack containing his personal effects, in circumstances where he had no need to do so to carry the items within the store, as they were already in his shopping cart.
Disposition
¶19 Because police had probable cause to arrest Morris for shoplifting by concealment under § 13-1805(A)(5),[4] we vacate the trial court's ruling and remand this matter for further proceedings consistent with this decision.

Because the other box is not distinct in the video, our analysis focuses on the purple and white box.

While we generally defer to the trial court's factual findings, "[b]ecause the trial court [was] in no better position to evaluate the video than the appellate court, we have conducted an independent review of the video evidence." State v. Sweeney , 224 Ariz. 107, ¶ 12, 227 P.3d 868 (App. 2010).

Although Sulavka addressed the right to jury trial, its discussion of larceny as the historical antecedent to shoplifting nonetheless supports our analysis.

We need not decide whether the trial court erred in concluding police lacked probable cause to arrest Morris for shoplifting the non-concealed sunglasses.