NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

ETHAN FOGG OSGOOD, *Appellant.*

No. 1 CA-CR 22-0302
FILED 10-12-2023

Appeal from the Superior Court in Yavapai County
No. P1300CR201700035
The Honorable John David Napper, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Mitchell Stein Carey Chapman, PC, Phoenix
By Molly Patricia Brizgys
*Co-counsel for Appellant*

Law Offices of Rhonda Neff, PLLC, Phoenix
By Rhonda Elaine Neff
*Co-counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Maria Elena Cruz joined.

---

**C A T L E T T**, Judge:

¶1        The superior court found Ethan Osgood ("Osgood") guilty of six counts of sexual exploitation of a minor because he possessed pornography depicting juveniles under the age of fifteen years. On appeal, Osgood challenges his convictions on various grounds, including that he was arrested without probable cause, the police unlawfully expanded the scope of the search of images conducted by various electronic communication service providers ("ESP"), and his sixty-year sentence is unconstitutionally disproportionate to the crime committed. We hold the police had probable cause to arrest Osgood, the police did not unlawfully expand the scope of the search conducted by the ESPs, and Osgood's sentence is constitutional. We affirm Osgood's conviction and sentence.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        Under federal law, if an ESP obtains knowledge of "any facts or circumstances from which there is an apparent violation of . . . child pornography [statutes]," it is required to "mak[e] a report of such facts or circumstances" to the National Center for Missing and Exploited Children ("NCMEC"). 18 U.S.C. § 2258A(a). NCMEC then forwards this information to the appropriate law enforcement agency for possible investigation. 18 U.S.C. § 2258A(a)(1)(B)(ii), (c).

¶3        In 2016, various ESPs, including Microsoft, Yahoo, and Chatstep, sent NCMEC reports containing images of suspected child pornography obtained from one IP address. NCMEC determined the IP address was in Arizona and sent the reports to the Prescott Police Department. In addition to the images, the reports contained other information associated with online activity, including the username "Gent" and email address "Legal-CPR@yahoo-inc.com." Detective Brazell opened the images and based on his experience concluded the images depicted individuals younger than fifteen.

¶4          Detective Brazell sent the reports and images to a deputy county attorney to obtain a subpoena for the IP address. Detective Brazell subsequently subpoenaed Cable One, whose response indicated the account belonged to Tiffany Kolar ("Kolar"), Osgood's live-in girlfriend. Osgood was an authorized user on the account servicing a house in Prescott that Osgood owned and lived in. During the investigation, Detective Brazell learned that Osgood was a supervisor for Life Line Ambulance and worked at Yavapai College as an Emergency Medical Services ("EMS") instructor.

¶5          Detective Brazell then took six of the images to a nurse at Childhelp in Phoenix. The nurse concluded that two images showed individuals under fifteen. Detective Brazell then drafted and obtained a search warrant for Osgood's home and vehicles.

¶6          Before executing the search warrant, Detective Brazell, accompanied by other officers, went to Yavapai College where Osgood worked and one of his vehicles was located. Detective Brazell found Osgood in his office and informed him there was a search warrant for his house and vehicles and Osgood "was going to go down to the police department." At the police station, Osgood was advised of his *Miranda* rights and interviewed. Osgood admitted to using screen names associated with the NCMEC reports, including "Gent" and others. Osgood made other incriminating statements, including admitting to using the internet to share images of individuals eleven to twelve years old.

¶7          That same day, police also executed the search warrant at Osgood's residence and seized Osgood's laptop and other computer equipment. A forensic examination revealed several images of child pornography on Osgood's laptop.

¶8          A Yavapai County grand jury indicted Osgood on twelve counts of sexual exploitation of a minor. Osgood moved to suppress the statements he made to Detective Brazell, arguing he was arrested without a warrant and without probable cause. Osgood also moved to suppress the images attached to the NCMEC reports on grounds the ESPs were government actors.

¶9          The superior court largely denied the motions. The court concluded that, at the time he contacted Osgood at the college, Detective Brazell had probable cause to arrest Osgood. The court also found that none of the ESPs were government actors and that both Yahoo and Microsoft viewed the images, but Chatstep did not. The court, therefore,

denied the motion as to the images attached to the Yahoo and Microsoft reports but suppressed the images attached to the Chatstep report.

¶10 Osgood moved for reconsideration on grounds that no one from either Yahoo or Microsoft viewed the images before sending them to NCMEC. The court denied that motion too.

¶11 The parties stipulated to dismissal of counts one and two with prejudice, then waived their right to a jury trial and agreed to submit counts three through twelve for a bench trial on the submitted record. The court eventually found Osgood guilty on counts seven through twelve. The court sentenced Osgood to the minimum ten years' imprisonment for each count. Because each count must run consecutively, the court sentenced Osgood to a total of sixty years' imprisonment. *See* A.R.S. § 13-705(P).

¶12 Osgood timely appealed. We have jurisdiction under Arizona Constitution Article VI, Section 9, and A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A).

## DISCUSSION

### I. Warrantless Arrest

#### A. Probable Cause to Arrest

¶13 Osgood argues he was arrested without a warrant and without probable cause, and thus the superior court should have suppressed his subsequent incriminating statements. When reviewing a motion to suppress, we review the trial court's factual findings for an abuse of discretion, "but review *de novo* the trial court's ultimate legal determination that the search complied with the requirements of the Fourth Amendment." *State v. Davolt*, 207 Ariz. 191, 202 ¶ 21 (2004). We look "only at the evidence presented to the trial court during the suppression hearing." *State v. Spears*, 184 Ariz. 277, 284 (1996).

¶14 The Fourth Amendment protects against unreasonable searches and seizures; courts must suppress evidence that is the fruit of an unlawful arrest. U.S. Const. amend. IV; *State v. Morris*, 246 Ariz. 154, 157 ¶ 10 (App. 2019). A police officer may arrest an individual without a warrant "if the officer has probable cause to believe . . . [a] felony has been committed and probable cause to believe the person to be arrested has committed the felony." A.R.S. § 13-3883(A)(1). "'The police have probable cause to arrest when reasonably trustworthy information and circumstances would lead a person of reasonable caution to believe an

offense has been committed by the suspect.'" *Spears*, 184 Ariz. at 284 (quoting *State v. Moorman*, 154 Ariz. 578, 582 (1987)). Whether probable cause existed is an objective question, "and whether an officer believed there were sufficient facts to support arrest is not material." *Morris*, 246 Ariz. at 157 ¶ 9. We "consider whether the collective knowledge of law enforcement officers at the time of arrest was sufficient to establish probable cause." *Id.*

¶15         Osgood argues that, while the police might have had probable cause to search his home, they did not have probable cause to arrest him because, at that time, the police did not verifiably know Osgood downloaded the images. More specifically, Osgood contends the police first needed to execute the search warrant to investigate and develop facts confirming Osgood downloaded the images, rather than Kolar or someone else. The State responds that there was sufficient probable cause to believe Osgood downloaded the images, even if there was some potential that someone else had done so. We agree with the State.

¶16         To begin, the police had probable cause to believe a felony had been committed by someone. Osgood does not argue otherwise, conceding "[t]he police had probable cause to serve a search warrant[.]" We agree—it was sufficiently clear at the time of Osgood's arrest that someone had committed a felony.

¶17         The key question for us is whether there was sufficient cause at the time of arrest to believe Osgood was the perpetrator of that crime. We conclude there was. Before Osgood's arrest, the police tied the illegal images to an IP address servicing a property Osgood owned and used. Police observed vehicles registered to Osgood at the address for that property. Osgood was an authorized user of the account tied to the IP address. The police also knew the username "Gent" and email address "Legal-CPR@yahoo-inc.com" were connected to the illegal activity. Both pointed in Osgood's direction, even if only slightly. The police knew Osgood was an EMS instructor, making him marginally more likely to use an email address with "CPR" in it. The username "Gent" is also more likely to be associated with a male than a female because it could be understood to be shorthand for "Gentleman," a courtesy title for a male. All this information together was sufficient to arrest Osgood.

¶18         Osgood did not live alone, so others in the home (or individuals visiting others in the home) could have accessed the IP address or online account connected to the unlawful images. Osgood argues others' potential access was sufficient to reduce suspicion below the level of

probable cause. The superior court disagreed, relying on *Maryland v. Pringle*, 540 U.S. 366 (2003), and we do too.

¶19 *Pringle* teaches that probable cause is not always a zero-sum game. There, police stopped a car occupied by three men for speeding. *Id.* at 367. Officers searched the car and found cocaine. *Id.* at 368. None of the three would admit ownership, so the police arrested them all. *Id.* The Supreme Court found probable cause to arrest all three because the officers could have concluded "*any* or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." *Id.* at 372 (emphasis added). The Court thought "a reasonable officer could conclude that there was probable cause to believe that Pringle committed the crime of possession of cocaine, either solely or jointly." *Id.* As Osgood puts it, "when an officer observes a crime that could have been committed by any number of people, an officer can use common sense judgment to ferret out the culpable person based on the circumstances on the scene."

¶20 And that is what the police did here. They determined who lived at Osgood's property and who was an authorized user of the account that accessed the unlawful images. So far as the police knew, the number of individuals satisfying those criteria was two (one less than the number of potential perpetrators in *Pringle*)—Osgood and Kolar. Osgood asserts other individuals lived at or visited Osgood's property, but he did not submit evidence that any of those individuals had authorized access to the internet account at issue, let alone evidence that the police knew others had such access at the time of arrest. Rather than arrest Osgood *and* Kolar, based on the information they had at the time, the police began with Osgood. We do not think it relevant to *Pringle*'s application that the police were not "on scene" when Osgood committed the crime—the police were not on scene when the passengers in *Pringle* actually possessed the hidden cocaine. The State did not violate Osgood's Fourth Amendment rights by arresting him first. *See id.* (holding the officers could have permissibly arrested any of the men); *United States v. Sloan*, 307 Fed. Appx. 88, 90 (9th Cir. 2009) (concluding there was probable cause to arrest when "an IP address registered to [the defendant] was associated with files confirmed to contain child pornography"); *State v. MacHardy*, ___ Ariz. ___, 521 P.3d 613, 618–19 ¶¶ 12–13 (App. 2022) (concluding there was probable cause to arrest when the defendant lived in an apartment complex and the "IP address tethered to [his] subscriber information had accessed illegal child sexual abuse materials seven months before the arrest").

¶21 Finally, Osgood points out that Detective Brazell later stated he was unsure whether he had sufficient probable cause to arrest Osgood.

This Court has previously explained that the subjective belief of an officer is irrelevant because "[t]he standard of probable cause is not a subjective standard but an objective one." *State v. Turner*, 142 Ariz. 138, 141 (App. 1984) ("Appellant takes great solace in the fact that the police stated in a transcript of an interview, submitted in evidence at the motion to suppress, that they did not think they had probable cause to permit a search of the luggage. Reliance on this theory is misplaced."). Because, objectively speaking, the police had probable cause to arrest Osgood, the superior court did not err in later admitting the statements he made after his arrest.

### B. Arrest in His Office

**¶22** Osgood next argues his arrest violated the Fourth Amendment because it occurred in his office, where he had a reasonable expectation of privacy. The State argues Osgood forfeited this argument by failing to raise it in the superior court. We need not decide whether Osgood forfeited the argument because even if we address its merits, the argument fails.

**¶23** Because Osgood did not raise this argument in the superior court, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567 ¶ 19 (2005). "[W]e place the burden of persuasion in fundamental error review on the defendant." *Id.* To prevail, "a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Id.* at 567 ¶ 20. "An error generally goes to the 'foundation of a case' if it relieves the prosecution of its burden to prove a crime's elements, directly impacts a key factual dispute, or deprives the defendant of constitutionally guaranteed procedures." *State v. Escalante*, 245 Ariz. 135, 141 (2018).

**¶24** We agree with the State that, given the lack of a factual record, Osgood is unable to prove error. In some situations, an individual may have a "reasonable expectation of privacy against intrusions by police into their offices." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 695 (9th Cir. 2009) (quotation marks omitted). But "unlike the nearly absolute protection of a residence, the great variety of work environments requires analysis of reasonable expectations on a case-by-case basis." *Id.* (quotation marks omitted). It is a fact-intensive analysis looking at whether the office was given over to the defendant's exclusive use. *Id.* at 696. "The defendant must demonstrate 'a subjective expectation of privacy in the area searched, and their expectation must be one that society would recognize as objectively reasonable.'" *Id.* at 695.

¶25          Osgood cannot meet that burden.  For example, the record does not tell us whether Osgood had exclusive use of his office or whether it was shared, open to the public, or accessible to any other individual.  We can only review the evidence presented to the superior court at the suppression hearing.  *Spears*, 184 Ariz. at 284 (We look "only at the evidence presented to the trial court during the suppression hearing.").  And on the record we have on the issue—a virtually non-existent one—Osgood has not established error—not to mention fundamental error.  *See Henderson*, 210 Ariz. at 568 ¶ 23.

## II.      Admissibility of the Images

### A.       Private Search Doctrine

¶26          Osgood next argues the superior court abused its discretion by denying his motion to suppress the images attached to the NCMEC reports because the State failed to prove any ESP viewed the images.  Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."  *State v. Fristoe*, 251 Ariz. 255, 259 ¶ 12 (App. 2021) (quoting *State v. Dean*, 206 Ariz. 158, 161 ¶ 8 (2003)).  The private search doctrine is one exception.  *See United States v. Jacobsen*, 466 U.S. 109, 114 (1984).  Thus, "a wrongful search or seizure conducted by a private party does not violate the Fourth Amendment and . . . such private wrongdoing does not deprive the government of the right to use evidence that it has acquired lawfully."  *Walter v. United States*, 447 U.S. 649, 656 (1980).

¶27          The State argues Osgood waived this argument by failing to raise it before or at the suppression hearing.  Osgood originally moved to suppress the images because the ESPs, who he claimed were government actors, viewed the images without a warrant.  In the motion, Osgood stated he "is informed and believes that one or more employees of such intercepting 'ESPs' opened the electronic communications and viewed the image(s) prior to transmitting the 'CyberTipline' reports to NCMEC."  Osgood then offered the NCMEC reports into evidence at the suppression hearing.  The superior court (correctly) rejected the argument that the ESPs were government actors.

¶28          Osgood later filed a motion for reconsideration.  Contrary to his prior position about whether an ESP viewed the images (he claimed they had), Osgood now stated that "no individual human being at Yahoo! or Microsoft (Skype) opened and viewed any image file allegedly uploaded by the Defendant."  Osgood attached a new expert report stating that no

individual at either company viewed the images. The court denied Osgood's motion because he did not establish good cause sufficient to warrant reconsideration. Based on this series of events, we reject the State's argument that Osgood did not sufficiently raise this issue with the superior court.

¶29 But the way Osgood raised the issue, including by taking contrary factual positions, is still relevant. Osgood first raised the issue in a motion for reconsideration, which we review for an abuse of discretion. *See Tilley v. Delci*, 220 Ariz. 233, 238 ¶ 16 (App. 2009). Osgood himself alleged that the ESPs had viewed the reports and that is the posture in which the parties litigated the suppression issue. The superior court then independently viewed the reports and concluded they adequately stated that Microsoft and Yahoo reviewed the images (as Osgood initially alleged). Indeed, all Microsoft and Yahoo reports state that those companies viewed the images; other courts have concluded that such a statement is sufficient to support a finding that an ESP did so. *See State v. Ryan*, 116 N.E.3d 170, 177 ¶ 20 (Ohio Ct. App. 2018); *United States v. Eley*, 2022 WL 181255, at *3 (D. Nev. Jan. 20, 2022). The superior court did not abuse its discretion by denying reconsideration.

### B. Scope of the Private Search

¶30 Alternatively, Osgood argues that, even if a private party viewed the images, Detective Brazell exceeded the scope of the private search by viewing the images and asking other individuals—a deputy county attorney and a nurse—to view the images. Osgood argues "Detective Brazell and the other government actors 'allowed the government to learn new, critical information' and they 'expanded the scope of the antecedent private search' by opening and analyzing the images beyond what the third party had done."

¶31 The question we must answer is whether, by the time Detective Brazell, the district attorney, and the nurse viewed the images, private-party searches had sufficiently frustrated Osgood's expectation of privacy in the images. *See Jacobsen*, 466 U.S. at 117 ("Once frustration of the original expectation of privacy occurs, the Fourth Amendment does not prohibit governmental use of the now-nonprivate information."). Two U.S. Supreme Court cases are relevant to that question.

¶32 First, in *Walter*, boxes of films were delivered to the wrong company. 447 U.S. at 651. Company employees opened the boxes and discovered they contained "explicit descriptions" suggesting the films were

obscene. *Id.* at 652. The employees did not watch the films but called the FBI. *Id.* Agents watched the films without obtaining a warrant. *Id.* The Court held this violated the Fourth Amendment because watching the films was a "significant expansion" of the private employees' search. *Id.* at 657.

¶33 In *Jacobsen*, FedEx employees opened a package damaged in transit. 466 U.S. at 111. The package contained a tube, which, when cut open, held bags with white powder. *Id.* The employees called the DEA, which conducted a field test on the substance and confirmed it was cocaine. *Id.* at 111–12. The Court analyzed whether the DEA's actions "exceeded the scope" of the private search and concluded "[t]he agent's viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment" because the agent was able "to learn nothing that had not previously been learned during the private search." *Id.* at 119–20.

¶34 Several federal circuit courts have held that law enforcement does not violate the Fourth Amendment by viewing images contained in an NCMEC report. *See United States v. Reddick*, 900 F.3d 636, 639 (5th Cir. 2018) (holding whatever expectation of privacy the defendant may have had in the images "was frustrated by Microsoft's private search"); *United States v. Miller*, 982 F.3d 412 (6th Cir. 2020) (same); *United States v. Powell*, 925 F.3d 1 (1st Cir. 2018) (same). We agree and hold that because a private party first opened and viewed the images, the subsequent opening and viewing by the police, a deputy county attorney, and a nurse did not require a warrant.

¶35 Contrary to Osgood's assertion, none of these individuals expanded the scope of the search. Specifically, Osgood argues "the opening and viewing of the images and the analysis for Sexual Maturity Rating exceeded the scope of any third-party search because the government's actions 'lead to observing new information not uncovered by the private search.'" The record adequately supports that the ESPs opened and viewed the images, reviewed them sufficiently to believe they contained child pornography, and reported them to NCMEC. Thus, Osgood's reliance on *United States v. Wilson*, 13 F.4th 961 (9th Cir. 2021), is misplaced because, there, no Google employee or other person reviewed the files at issue prior to the government agent viewing them. *See id.* at 971–72 ("[T]he government agent viewed Wilson's email attachments even though no Google employee—or other person—had done so, thereby exceeding any earlier privacy intrusion.").

¶36 Detective Brazell testified that from his experience he believed the images depicted juveniles, but as an extra precaution, had them examined by a nurse who also confirmed the images depicted

juveniles. Neither review exceeded the scope of the ESPs' search because Detective Brazell was "already substantially certain of what [was depicted in the images] based on the [reports]." *See United States v. Runyan*, 275 F.3d 449, 463 (5th Cir. 2001). "The police do not exceed the scope of a prior private search when they examine the same materials that were examined by the private searchers, but they examine [those] materials more thoroughly than did the private parties." *Id.*; *see also Walker v. State*, 669 S.W. 3d 243, 255 (Ark. App. 2023) (holding that an officer did not violate the defendant's constitutional rights by opening an image from Microsoft because "his review of the image merely confirmed what was already known and dispelled any residual doubt about the contents of the file").

**¶37** Detective Brazell did not learn materially new information from his search of the images, from the county attorney, or from the nurse. Rather, they confirmed the information contained in the NCMEC report—the images depicted pornography involving juveniles under fifteen. Thus, "there was no 'significant expansion of the search that had been conducted previously by a private party' sufficient to constitute 'a separate search.'" *Reddick*, 900 F.3d at 639 (quoting *Walter*, 447 U.S. at 657).

### III.    Expectation of Privacy in ISP Subscriber Information

**¶38** Osgood also argues the police obtained his internet service provider ("ISP") subscriber information and other associated information in violation of the Fourth Amendment and Arizona's Private Affairs Clause. *See* U.S. Const. amend IV; Ariz. Const. art. 2 § 8. "Whether a particular expectation of privacy is recognized by society as objectively reasonable is a matter of constitutional law that we consider de novo." *State v. Olm*, 223 Ariz. 429, 432 (App. 2010). Correctly recognizing that the Arizona Supreme Court recently rejected his argument (*see State v. Mixton*, 250 Ariz. 282 (2021) (*Mixton II*)), Osgood explains that he is preserving the argument for further appeal.

**¶39** In *Mixton II*, our supreme court held that "neither the Fourth Amendment to the United States Constitution nor article 2, section 8 of the Arizona Constitution requires law enforcement officials to secure a search warrant or court order to obtain IP addresses or subscriber information voluntarily provided to ISPs as a condition or attribute of service." 250 Ariz. at 299 ¶ 75. We are "bound by decisions of the Arizona Supreme Court and ha[ve] no authority to overturn or refuse to follow its decisions." *State v. Long*, 207 Ariz. 140, 145 ¶ 23 (App. 2004). Consequently, Osgood did not have a reasonable expectation of privacy in his ISP subscriber information.

## IV.    Constitutionality of Osgood's Sentence

**¶40**        Finally, Osgood argues that his sixty-year sentence is unconstitutionally disproportionate.  We review *de novo* whether a prison sentence is unconstitutional.  *See State v. Soto-Fong*, 250 Ariz. 1, 45 ¶ 6 (2020).  The Eighth Amendment prohibits "cruel and unusual punishment" and "has been applied to lengthy sentences of incarceration." *State v. Berger*, 212 Ariz. 473, 475 ¶ 10 (2006); U.S. Const. amend. VIII.  However, "courts are extremely circumspect in their Eighth Amendment review of prison terms." *Berger*, 212 Ariz. at 475 ¶ 10.  Thus, "noncapital sentences are subject only to a 'narrow proportionality principle' that prohibits sentences that are 'grossly disproportionate' to the crime." *Id.* (citation omitted).

**¶41**        In *Berger*, our supreme court dealt with a similar challenge to Arizona's sentencing scheme for possession of child pornography involving children younger than fifteen.  212 Ariz. at 473.  Berger was convicted of twenty counts of possession of child pornography and sentenced to the minimum ten-year consecutive term for each—a total of two-hundred years' imprisonment.  *Id.* at 475 ¶¶ 5–6.  The supreme court assessed "whether a ten-year sentence is disproportionate for a conviction of possessing child pornography involving children younger than fifteen" as courts generally do not consider the consecutive nature of a sentence in a proportionality inquiry.  *Id.* at 479 ¶ 27.  The court then held that it could not "conclude that a ten-year sentence is grossly disproportionate to Berger's crime of knowingly possessing child pornography depicting children younger than fifteen." *Id.* at 479 ¶ 29.  Instead, the court held "[t]he ten-year sentence imposed for each offense is consistent with the State's penological goal of deterring the production and possession of child pornography." *Id.* at 480 ¶ 33.

**¶42**        Based on *Berger*, Osgood's sentence does not violate the Eighth Amendment.  And because Osgood's cannot meet the threshold showing of disproportionality, we need not engage in an inter-jurisdictional comparison of sentences for the possession of child pornography, including by comparing Osgood's sentence to sentences set forth in the federal sentencing guidelines.  *See Berger*, 212 Ariz. at 477 ¶ 16; *Long*, 207 Ariz. at 147 ¶ 34.

**¶43**        Osgood also argues his sentence violates A.R.S. § 13-101(4) and (6) because Arizona's sentencing scheme is more severe than its federal counterpart.  A.R.S. § 13-101 "declare[s] . . . the general purposes of" Arizona's criminal code.  The subsections Osgood relies on provide that "the public policy of this state and the general purpose of this title are . . .

[t]o differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties for each" and "[t]o promote just and deserved punishment on those whose conduct threatens the public peace[.]"  A.R.S. § 13-101(4), (6).  While *Berger* did not directly address A.R.S. § 13-101, the statute was in effect at the time the court decided *Berger*, yet it still held the sentence at issue was lawful.  In any event, "the fixing of prison terms for specific crimes involves a substantive penological judgment that, as a general matter, is properly within the province of legislatures, not courts." *Berger*, 212 Ariz. at 483 ¶ 50 (citation omitted); *see also State v. Bly*, 127 Ariz. 370, 372 (1980) ("Unless the punishment is so severe as to be disproportionate to the crime . . . , the judiciary has discretion only to the extent provided by the legislature.").  Our supreme court has held that Arizona's sentencing scheme for possession of pornography depicting children under fifteen is constitutional.  That holding binds us and defeats Osgood's argument.

¶**44**       Finally, Osgood makes a one-sentence argument that "due to the arbitrary nature of how many images are charged," his punishment was arbitrary and violated his due process rights under the Fourteenth Amendment and Article 2 Sections 4 and 15 of the Arizona Constitution. Because Osgood failed to cite authority—and we have found none— explaining how the number of images he was *charged* with possessing caused his *punishment* to be "arbitrary," he has not meaningfully developed this argument on appeal, and thus we do not address it.  *See* Ariz. R. Crim. P. 31.10(a)(7); *State v. Rodriguez*, 251 Ariz. 90, 98 ¶ 25 n.9 (App. 2021); *see also Berger*, 212 Ariz. at 478 ¶ 26 (holding that while Berger did not argue the twenty separate counts for possession of child pornography was improper, he could not "as each count was based on a different video or photo image, the images involved some fifteen different child victims, and Berger had accumulated the images over a six-year period").

## CONCLUSION

¶**45**       We affirm Osgood's convictions and sentences.

